THE CITY OF LOCKPORT, Respondent, *v.* FRANCES MANGOLD and CONRAD MANGOLD, Appellants, Impleaded with CHARLES H. STAHLER.

*City of Lockport charter — action by the city attorney for unpaid taxes — reduction, by payment, of the arrears below fifty dollars after delivery of a transcript thereof to the city attorney and before suit.*

Section 238 of the charter of the city of Lockport (Laws of 1886, chap. 120, as amd. by Laws of 1894, chap. 639) provides that whenever the unpaid taxes, with lawful fees and interest, on any one piece of land shall have been in the hands of the treasurer for *one year* and shall amount to at least fifty dollars, the treasurer shall make a transcript thereof, together with all other taxes in his hands on the same land, certify the correctness thereof and deliver it to the city attorney.

Section 239 provides that similar action shall be taken as to all taxes (irrespective of amount) which shall have remained in the treasurer's hands for *three years.*

Section 240 of the charter provides that upon receipt of such transcript the city attorney shall *forthwith* bring an action to foreclose the lien for such taxes.

May 15, 1900, the treasurer of the city of Lockport delivered to the city attorney a transcript of the unpaid taxes on lands owned by Frances Mangold, showing the following amounts due: 1895, $18.67; 1896, $15.88; 1897, $17.84; 1898, $17.89; 1899, $17.05; water pipe assessment, $2.45, and fees and interest, $33.20; in all, $122.98. The city attorney did not commence the action forthwith, but made an arrangement with Frances Mangold by which the latter agreed to pay the taxes in installments. Pursuant to this arrangement she paid the taxes of 1895, 1896 and 1897, besides the fees and interest thereon, but refused to pay the taxes of 1898 and 1899, amounting to $34.94. The city attorney thereupon, December 26, 1900, brought an action to foreclose the lien for the taxes of 1898 and 1899, with fees and interest amounting to less than $50, and also for those of 1900. The tax for the latter year was not contained in the transcript delivered to the city attorney, and had not been in the treasurer's hands for one year.

*Held,* that the action was prematurely brought, as taxes amounting to fifty dollars were not one year in arrear, nor were any of the taxes three years in arrear;

That the right to bring the action should be determined as of the time when it was actually commenced, and not as of the time when the transcript was issued to the city attorney.

APPEAL by the defendants, Frances Mangold and another, from an interlocutory judgment of the County Court of Niagara county in favor of the plaintiff, entered in the office of the clerk of the

county of Niagara on the 25th day of November, 1901, upon the decision of the court.

*Wallace Thayer*, for the appellants.

*Charles L. Nicholls* and *William H. Vicary*, for the respondent.

WILLIAMS, J.:

The interlocutory judgment should be reversed and a new trial granted, with costs to appellants to abide event.

The action was for a foreclosure of a lien upon and the sale of real estate for unpaid taxes, under the provisions of the city charter (Laws of 1886, chap. 120).

Section 238 (as amd. by Laws of 1894, chap. 639) provides, in brief, that whenever unpaid taxes, with lawful fees and interest on any one piece of land shall have been in the hands of the treasurer for *one year* and shall amount to at least fifty dollars, the treasurer shall make a transcript thereof, together with all other taxes in his hands on the same land, certify the correctness thereof and deliver it to the city attorney.

Section 239 (as amd. by Laws of 1894, chap. 639) provides the same thing as to all taxes (which would include those amounting to less than fifty dollars), which shall have remained in his hands for *three years.*

Section 240 (as amd. by Laws of 1894, chap. 639) provides that, upon receipt of such transcript, the city attorney shall *forthwith* bring the action for foreclosure and sale.

May 15, 1900, the treasurer delivered a transcript to the city attorney of taxes on the land in question against the owner, Frances Mangold, viz.: 1895, $18.67; 1896, $15.88; 1897, $17.84; 1898, $17.89; 1899, $17.05; water pipe assessment, $2.45, and fees and interest, $33.20; in all, $122.98.

The city attorney, instead of commencing the action forthwith, wrote the owner, and an interview resulted in an arrangement to delay the action and give the owner an opportunity to pay the taxes in installments, and so save the expense of a foreclosure. Under this arrangement the owner paid into the treasurer's office the taxes of 1895, $18.67, June 5, 1900 ; the taxes of 1896, $15.88, September 19, 1900, and the tax of 1897, $17.84, October 24,

1900, amounting in all to $52.39, besides fees and interest thereon. She refused to pay anything further, leaving the taxes of 1898 and 1899, amounting to $34.94, unpaid. Thereupon this action was commenced December 26, 1900, to foreclose for the taxes of 1898 and 1899, which, with fees and interest, amounted to less than $50. The taxes for 1900 were also alleged in the complaint, but improperly so, as they were not on the transcript and had not been in the treasurer's hands for *one year.* The defendant Mangold answered, admitting that the taxes were levied, as alleged, and remain unpaid, with fees and interest, and alleged that the action was prematurely brought, because the amount of the taxes, with fees and interest, did not amount to $50 and had not been in the treasurer's hands *three* years. The trial court directed judgment for the whole three years' taxes and fees and interest.

The principal question raised is that the action was prematurely brought. It is said by the plaintiff that the right of action accrued when the transcript was delivered to the city attorney by the treasurer, May 15, 1900, and that it was not taken away by the subsequent payment of a part of the taxes before the action was actually commenced. This claim cannot, however, be sustained. The right of action is in no way dependent upon the issuing of the transcript. That is required to be issued merely for the purpose of calling the attention of the city attorney to the facts existing in the treasurer's office, and making it his duty *forthwith* to bring the action. The right of action is based upon the condition of things in the treasurer's office when the action is commenced, to wit, the presence of unpaid taxes upon the piece of land which with fees and interest amount to at least fifty dollars, and that they have been there for one year. This condition of things did not exist at the time the action was commenced, and both the treasurer and city attorney knew it. The taxes for 1895, 1896 and 1897, with fees and interest, had been paid to and received by the treasurer since he issued his transcript. The amount *had* been at least fifty dollars for a time, but had been reduced below that amount, and *was* below that amount when the action was commenced. The treasurer could not then issue a transcript for the taxes unpaid, because they had not been in his hands for *three years* as provided by the statute. The right to bring this action, therefore, did not then exist.

The scheme of the statute is not to permit a foreclosure and sale for any unpaid taxes for less than fifty dollars unless they have been so unpaid for at least *three years.* The owner of the property may prevent a foreclosure and sale by keeping the amount of unpaid taxes in the treasurer's hands below fifty dollars, and less than three years' standing. No injustice was done the city by the payment of these taxes below fifty dollars before the action was brought. It was a legal right the owner had under the statute. The treasurer could not refuse to receive the money, and when the amount was reduced below fifty dollars the policy of the law was not to permit a foreclosure and sale. If the city attorney wanted to bring the action he should have done so *forthwith* as the statute directs. By delaying the action he gave the owner an opportunity to prevent the foreclosure and sale by paying down the taxes below fifty dollars. The trial court erroneously ordered judgment for the plaintiff.

The interlocutory judgment should, therefore, be reversed and a new trial granted, with costs to appellant to abide event.

ADAMS, P. J., SPRING, HISCOCK and DAVY, JJ., concurred.

Judgment reversed and new trial ordered, with costs to the appellant to abide event upon questions of law only, the facts having been examined and no error found therein.